UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

Erik Sinclair
David Krall,

On behalf of themselves
and all others similarly situated,

|  |  |  |
|---|---|---|
| | Plaintiffs, | Case No. 17-CV-224 |
| v. | | |
| PGA Inc. | | |
| | Defendant. | |

**DEFENDANT PGA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT**

**INTRODUCTION**

Despite having substantial opportunity to conduct discovery in this matter, Plaintiffs have

not, and cannot, meet their burden of putting forth evidence necessary to demonstrate that PGA

acted willfully with regard to any alleged violation of the Fair Labor Standards Act, and

therefore this Court must hold that the two-year statute of limitations is applicable to Plaintiffs'

FLSA claim.  Moreover, Plaintiffs have advanced a theory regarding the "cross-classification

rule" under Wisconsin's prevailing wage statute that ignores the statute's plain language.  PGA

requests that this Court hold, as a matter of law, that the cross-classification rule applies on a

weekly (not daily) basis and focuses its analysis on whether work is "incidental work," as

defined by statute.  PGA requests that this Court reject Plaintiffs' proposed test, which ignores

the statutory definition of "incidental work" and instead would analyze whether work is

"separate and distinct" from the tasks in the employee's primary trade classification, despite

those terms being neither defined by the Wisconsin statutes nor terms of art.  Finally, PGA is entitled to summary judgment on Krall's FLSA claim, which alleges that PGA should have used the "Weighted Average" method instead of the "Rate in Effect" method to compute overtime when employees worked in two or more trade classifications during the same work week, because Krall worked no overtime hours during his employment with PGA.

Therefore, PGA respectfully requests that this Court grant PGA's Motion for Partial Summary Judgment and hold that a two-year statute of limitations applies to Plaintiffs' FLSA claim, that the appropriate cross-classification rule analyzes whether work was "incidental work" on a weekly basis, that PGA's requirement that employees separately record different trade work is not unlawful, and that Krall's FLSA claim fails as a matter of law because he worked no overtime hours for PGA.  Although PGA seeks summary judgment on the correct cross-classification standard, any liability under such standard is an issue of fact that will be resolved after this Court's summary judgment ruling.

## BACKGROUND FACTS

PGA is an employer that performs plumbing, heating, cooling, electrical and excavating work on prevailing and non-prevailing wage projects throughout Wisconsin.  (PGA's Rule 56 Statement of Undisputed Material Facts ("SMF") ¶ 1.)  For each prevailing wage project that PGA worked on, the State of Wisconsin made a prevailing wage determination that set out a minimum total package hourly compensation for employees of various job classifications. (SMF ¶ 2.)

On occasion, PGA employees would perform work in different trade classifications during the same day; for example, an employee might spend six hours performing sheet metal work and two hours performing general labor work during his work day.  (SMF ¶ 3.) When

employees would work in different trade classifications, PGA required them to separately record the hours performed in different trade classifications. (SMF ¶ 4.)  PGA required employees to separately record these hours so that, at the end of the work week, PGA would be able to determine whether lower-paid trade work constituted more than 15% of the employee's work at the end of the work week.  (SMF ¶ 5.)  This requirement was based on PGA's understanding that separate tracking was required by the State of Wisconsin – Department of Workforce Development (the "DWD"). (SMF ¶ 6.)

In October 2014, PGA's Controller, Gail Wozniczka ("Wozniczka"), attended a presentation entitled "Prevailing Wage: The Basics and Beyond" that addressed state and federal prevailing wage laws.  (SMF ¶ 14.)  The prevailing wage presentation attended by Wozniczka explained how to calculate overtime for employees who perform work in multiple trade classifications during the same work week.  (SMF ¶ 15.) The relevant slide provides two alternative methods, the "Rate in Effect Method" and the "Weighted Average" method.  The slide states that, although state and federal law "assume" different methods are used, an employer is permitted to use either method as long as employees have advance notice of which method is being used.  (*Id.*)

In addition, Tom Barnetzke ("Barnetzke"), PGA's Vice President and Chief Financial Officer, initiated multiple telephone conversations with the DWD to confirm his understanding that PGA's practices complied with applicable laws.  (SMF ¶¶ 7-8.)  The DWD issued guidance to PGA that advised how employers should calculate overtime for state prevailing wage projects, and PGA complied with this guidance. (SMF ¶¶ 11-13.)

David Krall ("Krall"), one of the named plaintiffs in this case, is unaffected by PGA's use of either method of calculating overtime because, during his employment with PGA, Krall never worked any overtime hours for PGA.  (*Id.* ¶ 19.)

## ARGUMENT

### I.    Summary Judgment Standard.

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Likewise, "[s]ummary judgment is appropriately entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1139 (7th Cir. 1997) (quoting *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 479 (7th Cir. 1996).

"In order to successfully oppose a motion for summary judgment, the nonmoving party . . . must do more than raise a 'metaphysical doubt' as to the material facts."  *Id.*  The nonmoving party must instead "come forward with 'specific facts showing that there is a *genuine issue for trial*."  *Id.*  (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  "'Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Id.*  (citation omitted).  Moreover, although the Court must draw all inferences in the light most favorable to the nonmoving party, "when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict."  *Langenbach v. Wal-Mart Stores, Inc.*, 988 F. Supp. 2d 1004, 1011 (E.D. Wis. 2013).  Additionally, the Court is "not required to draw every conceivable inference from the record."  *Gleason*, 118 F.3d at 1139. It "need draw only reasonable ones."  *Id.*

## II.     Plaintiffs' FLSA Claim is Subject to a Two-Year, Rather than a Three-Year, Statute of Limitations.

Plaintiffs' First Amended Complaint alleges that PGA maintained a policy of calculating overtime pay for employees who work in two or more trade classifications during the same work week using the "blended average straight time wage rate" method.  (ECF No. 6 at 3.)  However, Plaintiffs allege that PGA systematically failed to implement this policy and instead computed overtime using the wage rate for the type of work performed during the overtime hours, instead of the blended or average rate.  (*Id.*)  Plaintiffs allege that PGA has thereby violated the FLSA, and that such violations were willful.  (*Id.* at 9.)

Plaintiffs have no evidence that any alleged violations of the FLSA by PGA were willful as required to expand the statute of limitations from two to three years.  Because Plaintiffs cannot meet their burden of proof on the issue of willfulness, the Court must hold that the two-year statute of limitations is applicable to Plaintiffs' FLSA claim.

### A.     To Enlarge the Statute of Limitations, the FLSA Requires Proof that an Employer Acted Intentionally or Recklessly in Determining its Legal Obligations.

Claims under the FLSA are subject to a two-year statute of limitations.  29 U.S.C. § 255(a).  The two-year period may be enlarged to three years if the claim arose out of a "willful violation."  *Id.*  Plaintiffs bear the burden of showing that PGA's conduct was "willful" for purposes of the FLSA's statute of limitations.  *Bankston v. Illinois*, 60 F.3d 1249, 1253 (7th Cir. 1995).  Indeed, the FLSA presumes a two-year statute of limitations unless the claimant can show that the employer acted willfully.  *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 308 (7th Cir. 1986) ("Section 6(a) makes two years the presumptive statute of limitations, to be increased only if the plaintiff shows that the violation was 'willful.'").  Although willfulness is a question of fact, "the court may decide the issue as a matter of law if the plaintiff does not

produce evidence that would enable a reasonable jury to find in his or her favor." *Rogers v. AT&T Servs., Inc.*, No. 11 C 5550, 2014 WL 4361767, at \*9 (N.D. Ill. Sept. 3, 2014) (citing *Howard v. City of Springfield*, 274 F.3d 1141, 1144 (7th Cir. 2001)).

The willfulness standard is difficult to meet.  "An employer's mere negligence or a good faith—but incorrect—belief that they were in compliance with the FLSA, are not sufficient to rise to the level of a willful violation." *Caraballo v. City of Chi.*, 969 F. Supp. 2d 1008, 1025 (N.D. Ill. 2013) (citation omitted).  To establish willfulness, Plaintiffs must show that the employer either knew its actions violated the law or acted recklessly in determining whether its actions violated the law or not.  *E.E.O.C. v. Madison Cmty. Unit Sch. Dist. No. 12*, 818 F.2d 577, 585 (7th Cir. 1987), *see also Walton v. United Consumers Club*, 786 F.2d at 311 (defining "willful" as "knowing and voluntary" for purposes of the FLSA.)

The willfulness standard that Plaintiffs must prove for purposes of the statute of limitations is more difficult to meet than the showing of willfulness necessary for liquidated damages.  *Walton v. United Consumers Club*, 786 F.2d at 312.  For example, in *Wyland v. District of Columbia Government*, 728 F. Supp. 35 (D.D.C. 1990), the court awarded plaintiffs liquidated damages after finding that the defendant failed to act reasonably and in good faith when it decided to treat plaintiffs as exempt employees, but nevertheless refused to extend the statute of limitations from two to three years because "a finding of unreasonableness does not alone support a finding of willfulness." *Id.* at 37.

### B.    PGA Investigated its Legal Duties and Had a Correct Understanding of What the FLSA Requires.

In this case, Plaintiffs have no evidence from which a reasonable jury could reach a finding of willfulness.  The undisputed facts demonstrate that PGA made affirmative, good-faith efforts on various occasions to understand and comply with its legal obligations and its

understanding was consistent with applicable law.  The FLSA allows employers to calculate overtime for employees working in more than one trade classification during a single work week using either the "Weighted Average" method or the "Rate in Effect" method.  29 C.F.R. §§ 778.115, 778.419.  On October 22, 2014, Wozniczka attended a prevailing wage presentation given by a lawyer that addressed state and federal prevailing wage laws.  (SMF ¶ 14.) This presentation advised that employers are permitted to use either the "Rate in Effect Method" or the "Weighted Average" method to calculate overtime when an employee works in multiple trade classifications during a single work week under both the FLSA and Wisconsin state law. (*Id.* ¶ 15.)  Wozniczka took notes during the presentation, including a notation regarding the payment of overtime for an employee with multiple rates.  (*Id.*)  Wozniczka's notes demonstrate her understanding from the presentation that PGA is permitted to use the "Rate in Effect" or the "Weighted Average" method for calculating overtime pay, and that the method used "can change." Such an understanding was reasonable.  *Wyland*, 728 F. Supp. at 37 (holding proof of even unreasonable conduct is not sufficient to expand the statute of limitations).

    In addition to the presentation attended by Wozniczka, Barnetzke initiated multiple telephone conversations with the DWD to confirm his understanding that PGA's practices complied with applicable laws.  (SMF ¶¶ 7-13.)  Wisconsin state law and the FLSA both permit employers to calculate overtime using *either* the "Rate in Effect" or the "Weighted Average" method for calculating overtime.  *Compare* 29 C.F.R. §§ 778.115, 778.419 *with* SMF ¶¶ 10-11. Because the FLSA and Wisconsin state law utilize the same calculation methods, Barnetzke's communications with the DWD regarding those methods are further evidence of PGA's good faith efforts to comply with applicable laws.

C.     **Plaintiffs Have No Evidence PGA Acted Negligently, Let Alone Evidence of Reckless Conduct.**

In response to PGA's request that Plaintiffs produce "all documentation evidencing a willful violation of applicable law by PGA," Plaintiffs stated that "[t]he only responsive documents are the transcript of the deposition of PGA Inc., and the Powerpoint slides and notes for a presentation by Attorney Douglas Witte[.]" (SMF ¶¶ 16-18.)  None of these documents, whether viewed alone or together, demonstrate that PGA knew it was violating the law.

First, Plaintiffs' statement that Barnetzke's corporate representative deposition testimony evidences a willful violation of applicable law is not supported; in fact, Barnetzke testified regarding his efforts to clarify PGA's legal obligations.  (*Id.* ¶¶ 7-8.)  Indeed, even if taken as true, Barnetzke's representative testimony and other efforts demonstrate that PGA made a good faith effort to ascertain its obligations by taking affirmative steps to speak with the DWD and understand its obligations.  (*Id.* ¶¶ 7-11.)  As described above, the DWD provided Barnetzke with guidance that allows Wisconsin employers to utilize *either* the weighted average *or* the rate in effect method, and this guidance is consistent with the FLSA.  *See* 29 C.F.R. §§ 778.115, 778.419; SMF ¶¶ 10-11.  Such facts do not show willful or reckless disregard by PGA of its obligations.

Second, Plaintiffs' discovery response points to the PowerPoint slides and notes from the "Prevailing Wage: The Basics and Beyond" presentation attended by Wozniczka as documentation evidencing a willful violation of PGA's obligations under the FLSA.  But these slides show that PGA acted responsibly to investigate its duties.  The PowerPoint presentation states that Wisconsin employers are permitted to use *either* the "Rate in Effect" method *or* the "Weighted Average" method to calculate overtime for employees with multiple rates in a single

work week, and states that employers "can use either [method]." (SMF ¶ 15.)  This is consistent with both state and federal law.  *See* 29 C.F.R. §§ 778.115, 778.419; SMF ¶¶ 10-11.

These facts demonstrate that PGA took affirmative steps to understand its obligations on prevailing wage jobs. To the extent that Plaintiffs claim PGA made isolated mistakes in the implementation of these calculation methods, case law is clear that an employer's negligence or a good faith, but incorrect, belief regarding compliance with the FLSA is *not sufficient* to rise to the level of a willful violation.  *Caraballo v. City of Chi.*, 969 F. Supp. 2d at 1025.  Thus, Plaintiffs have not demonstrated that PGA had knowledge of its purported obligations and willfully disregarded them.  Because Plaintiffs have not, and cannot, meet their burden of demonstrating that PGA knew of, and acted in willful or reckless disregard for, its purported obligations, this Court must presume that the two-year statute of limitations is applicable to Plaintiffs' claims.

III.    **PGA is Entitled to Partial Summary Judgment on Count III Because Plaintiffs'
        Interpretation of the "Cross-Classification Rule" is Unsupported by Wisconsin Law.**

        A.    **Pursuant to DWD Regulations, the "Cross-Classification Rule" Applies to
              the Calculation of Overtime Pay for "Incidental Work."**

As a general rule, the Wisconsin DWD requires employers to pay prevailing wage workers at the appropriate trade rate for the work actually performed, not based on a previously assigned trade classification.  DWD guidance provides that the proper classification of a worker on a prevailing wage project depends on "the specific duties the worker performs, not on a previously assigned occupational title." (ECF No. 47-6.)  As a result, the task of determining appropriate trade classification is typically a fact-intensive inquiry that assesses the day-to-day tasks actually performed by the worker.

The "cross-classification rule" is a shortcut method of determining payment for "incidental work;" in other words, the rule alleviates certain recordkeeping burdens when

workers primarily work in one trade classification but spend a limited amount of time performing tasks that properly fall within a different classification. For example, consider an employee who performs sheetmetal installation tasks for the majority of his day and then spends 15 minutes at the end of each day sweeping up his metal shavings. Although his sweeping is properly classified as general labor work, that work would be deemed "incidental" and paid at the sheetmetal rate pursuant to the cross-classification rule. *See* Wis. Admin. Code §§ DWD 290.01(10m), 290.03(3).

The cross-classification rule is found in Wisconsin Administrative Code section DWD 290.03(3), which provides: "A laborer, worker, mechanic or truck driver that performs work in more than one occupational classification during a given work week shall be cross-classified and compensated for all work performed in each classification, unless work other than the primary classification is incidental work. Incidental work shall be compensated at the higher primary classification prevailing wage rate." "Incidental work," in turn, is defined by section DWD 290.01(10m) to mean "work performed in a classification other than an employee's primary classification that is paid a lower prevailing wage rate and performed for 15% or less of the employee's time spent working on a particular project of public works or a particular publicly funded private construction project during a given work week." Taken together, these regulations establish a 15% weekly threshold: if lower-paid trade work is *less than* 15% of the employee's weekly hours, it is "incidental work" that must be paid at the higher-paid trade rate. If lower-paid trade work is *more than* 15% of the employee's weekly hours, it is no longer "incidental work" and may be paid at the separate, lower rate for that specific trade. Thus, the cross-classification rule implements a numerical threshold and does not involve any assessment

10

of the factual circumstances of a worker's day-to-day tasks; indeed, the rule was created to *avoid* the usual requirement that a factual assessment be performed.

> **B.**   **Plaintiffs' Argument that the Cross-Classification Rule Should Apply on a Daily Basis is Contrary to the Plain Language of the Regulation and DWD Guidance.**

Despite the clear operation of the cross-classification rule described in the DWD's regulations, Plaintiffs argued in support of their Motion for Rule 23 Class Certification that Wisconsin employers cannot require employees to separately record the appropriate trade classifications that the tasks they performed that day properly fit within.  Instead, Plaintiffs urged this Court to adopt a new rule that if workers perform work in two trade classifications during the same day, then all lower-paid trade work performed on that day must be paid at the higher trade rate. (ECF No. 35 at 16-17.)  Plaintiffs argued that "the rules of cross classification cannot apply to employees who perform on the same day both skilled trade work, and work that makes possible, supports or cleans up said skilled trades work," and that "cross classification rules cannot apply to any of the work that PGA classifies to be General Laborer work[.]"  (*Id*.)  Determining whether lower-paid trade work "makes possible, supports or cleans up" higher-paid trade work would require a factual assessment of the worker's day-to-day tasks, even when those tasks constitute less than 15% of the employee's weekly hours.  As a result, Plaintiffs' argument would eviscerate the clear purpose and operation of the cross-classification rule.  Because it is directly contrary to state law on this issue, Plaintiffs' argument should be rejected by this Court as a matter of law.

Plaintiffs' argument that cross-classification should be applied on a *daily* basis, as well as on a weekly basis, misstates the plain language of the DWD's regulation and should be rejected as a matter of law.  Under Plaintiffs' mistaken approach, an employee that worked one hour of general labor and nine hours of install work on a single day should be paid at the install rate for

all of his hours on that day because he performed general labor work for less than 15% of his day, regardless of whether his general laborer work was more than 15% of his work during the work week.  Plaintiffs' approach disregards the plain language of DWD section 290.03(3), which provides that "[a] laborer, worker, mechanic or truck driver that performs work in more than one occupational classification *during a given work week* shall be cross−classified …" (emphasis added).  Likewise, DWD guidance cited by Plaintiffs' counsel contemplates application of the 15% cross classification rule on a weekly basis, not a daily basis: "[i]ncidental work is performed in a classification other than a worker's primary classification that is paid a lower prevailing wage rate and performed for 15% or less of the worker's time spent working on a particular project *during a given work week*." (ECF No. 47-6) (emphasis added.)

Plaintiffs' "daily-basis" approach does not make sense mathematically, either.  Under Plaintiffs' approach, the only way a worker could ever be paid at the general laborer rate is if the worker performed only general laborer work on that day (because, if they performed any higher-paid trade work, Plaintiffs argue that the whole day should be paid at the higher rate.)  Assuming that is true, then cross-classification rule would rarely or never apply.  Take an employee who works a 40-hour work week; the 15% cross-classification rule as established by the DWD would rarely or never apply (such that the worker would be paid at the general laborer rate) because the employee must have worked one full day (generally, 8 hours) of general laborer work to have been paid at the general laborer rate: (8 general laborer hours / 40 total hours) x 100 = 20% of the employee's work week.  Thus, the 15% cutoff described in the DWD regulations would be rendered useless by Plaintiffs' approach.  This result is absurd.

C.     **Plaintiffs' Reliance on Whether Lower-Paid Trade Work is "Separate and Distinct" from Higher-Paid Trade Work Ignores the DWD's Definition of "Incidental Work."**

Plaintiffs' cross-classification argument must also be rejected because it relies on assumptions as to whether general laborer tasks performed on the jobsite were "separate and distinct" from the worker's higher-paid trade, when "separate and distinct" is not a term of art nor does it appear anywhere in the text of the DWD regulations that establish the cross-classification rule.  Plaintiffs ignore the definition of "incidental work" that is provided in the DWD regulations and instead seize on a single phrase from the DWD's website—which they have taken out of context—and are treating it as though it is a term of art and a definitive aspect of the cross-classification rule, when it is, in fact, neither.

As discussed previously, the DWD's regulations define "incidental work" as "work performed in a classification other than an employee's primary classification that is paid a lower prevailing wage rate and performed for 15% or less of the employee's time spent working on a particular project of public works or a particular publicly funded private construction project during a given work week."  Wis. Admin. Code § DWD 290.01(10m).  Lower-paid trade work is required to be paid at the higher-paid wage rate only when such lower-paid trade work is "incidental" pursuant to this definition.  Wis. Admin. Code § DWD 290.03(3).

The DWD regulations never use the term "separate and distinct" when establishing or defining the operation of the cross-classification rule.  Plaintiffs find the phrase "separate and distinct" on the DWD's website, but fail to read it in context.  (ECF No. 47-6.)  Indeed, the "separate and distinct" language appears in a paragraph discussing the definition for "incidental work" found in the regulations.  (*Id.*)  Plaintiffs ignore the majority of the DWD's guidance and the definition of incidental work, and instead argue that this "separate and distinct" language, taken out of context, somehow obviates or controls the remainder of the guidance.

13

DWD guidance provides that the proper classification of a worker on a prevailing wage project depends on "the specific duties the worker performs, not on a previously assigned occupational title." (*Id*.) The cross classification rule, described above, is the sole exclusion to this directive and is designed as a shortcut to determine when work is "incidental" pursuant to DWD section 290.01(10m). When an employee performs lower-paid trade work for more than 15% of his or her workweek, it can no longer be assumed that the lower-paid work is "incidental" to the higher-paid trade, and the parties must instead look to the actual tasks the employee performed during the workweek to determine the appropriate wage rate to pay that worker. The DWD's Dictionary of Occupational Classifications and Work Descriptions (the "Dictionary") defines "the specific work that is typically performed by each occupational classification recognized by [the DWD]." (ECF No. 54-1 at 1.) "Each occupational classification and work description contained in [the Dictionary] is deemed presumptively valid throughout the entire State of Wisconsin." (*Id.*)

According to the Dictionary, a general laborer "performs a wide variety of both unskilled and semi-skilled tasks but does not regularly and routinely assist as worker in any other classification by using the tools normally associated with that worker's classification." (ECF No. 54-2 at 1.) General laborers perform a variety of "helping-type" work on a job site; typical general laborer duties include "work [that] is normally manual in nature, such as digging, loading, unloading, lifting, carrying, lugging, tending, stockpiling, sweeping and cleaning …." (*Id.*) In contrast, the Dictionary defines a sheet metal worker as one who "fabricates, assembles, installs or repairs sheet metal products and equipment …." (ECF No. 54-2 at 3.) In other words, it is the sheet metal worker that performs the actual fabrication, assembly, install and repair work using the tools of the sheet metal trade, but it is the general laborer that performs tasks that may

be somewhat related to sheet metal work, but do not require use of the tools of the trade, such as loading or unloading, carrying or stockpiling sheet metal materials, or sweeping and cleaning up debris created by the fabrication, assembly, installation or repair.

Plaintiffs' argument is undercut by the plain language of the Dictionary's definition of general laborer. One of the tasks specifically contemplated by the DWD in its definition of general laborer is "[m]ix[ing] and deliver[ing] mortar by bucket, hod, wheelbarrow or buggy for use by bricklayer or plasterer." (ECF No. 54-2 at 1.) The general laborer's mixing and delivery of mortar to a bricklayer or plasterer very clearly "makes possible" and "supports" the higher-paid bricklayer or plasterer work, but yet is still separately defined as general laborer work. Under Plaintiffs' proposed rule, this work should be paid at a higher wage rate—even though it is expressly defined as general laborer work—if the worker performs at least one hour of higher-paid trade work that day.

But Plaintiffs' argument goes even further: If a PGA employee performed one hour of sheet metal work on a given day, then spent seven hours mixing and delivering wheelbarrows of mortar to bricklayers on that same day (designated as general laborer work), PGA would be required to pay out the seven hours spent mixing and delivering mortar at the *sheet metal rate*, even though those tasks have nothing to do with the sheet metal trade whatsoever. Although this is nonsensical, this would be the practical result of ignoring the specific, individualized nature of the work performed by a worker on any given day and instead requiring all general laborer work to be paid in the method advocated by Plaintiffs. This argument is contrary to the plain language of the DWD regulations and guidance and should be rejected as a matter of law by this Court.

IV.   **PGA Did Not Violate Wisconsin Law by Requiring its Employees to Separately Record Different Trade Work.**

Although clearly defined by the DWD's regulations, Plaintiffs' argument misunderstands the cross-classification rule.  As discussed above, the plain language of Wisconsin statutes and regulations provide that the cross-classification rule is applied on a weekly basis by calculating the total amount of lower-paid trade work performed during the work week; if this lower-paid trade work constitutes less than 15% of the employee's work week, it is considered "incidental work" pursuant to the statutory definition and that time should be paid at the higher-paid trade rate.  In contrast, if the lower-paid trade work constitutes more than 15% of the employee's work week, it should be paid at the lower-paid trade rate.

To perform this calculation at the end of the work week, it is important to have a record of how many hours were spent performing different trade work each day.  Indeed, it would be impossible for an employer to perform the calculation without these records.  Despite the necessity of this recordkeeping, Plaintiffs have alleged that "PGA … violated Wisconsin prevailing wage laws by requiring its employees to separately keep track of related work that they performed in different classifications on the same prevailing wage projects, and then paying the related work at two or more rates even though the work in the different trades were related to and in support of, rather than separate and distinct from each other."  (ECF No. 6 at 10-11.)  PGA's requirement that workers separately record work they performed in different trade classifications on any given day is not unlawful pursuant to the DWD regulations, and therefore this argument must fail as a matter of law.

V.   **Krall's FLSA Claim Fails as a Matter of Law Because he Worked No Overtime Hours for PGA.**

As discussed in detail in section II, Plaintiffs' First Amended Complaint alleges that PGA should have used the "Weighted Average" method to compute overtime for employees who

worked in two or more trade classifications during the same work week, but "systematically failed" to use this method and instead computed overtime using the wage rate for the type of work performed during the overtime hours.  (ECF No. 6 at 3.)  A necessary prerequisite to recovery under Plaintiffs' theory is some amount of overtime hours for which Plaintiffs were paid at a rate less than the blended rate.  Because Krall worked zero overtime hours while employed by PGA, his FLSA overtime claim must fail as a matter of law.  (SMF ¶ 19.)

## CONCLUSION

For the reasons set forth above, PGA respectfully requests that this Court grant PGA's Motion for Partial Summary Judgment, finding (i) that Plaintiffs have failed to present evidence sufficient to support a finding that PGA acted willfully (and consequently a two-year statute of limitations applies to Plaintiffs FLSA claims), (ii) that the "cross classification rule" under Wisconsin prevailing wage law should be applied on a weekly basis and does not apply to "incidental work," as defined by statute, (iii) that the "separate and distinct" test proposed by Plaintiffs is unsupported by Wisconsin law, (iv) that PGA did not violate Wisconsin law by requiring its employees to separately record hours of work performed in different trade classifications during the same work day, and (v) that Krall's FLSA overtime claim fails as a matter of law.

Dated this 13th day of July, 2018.

                                    _\_/s/ Katherine M. O'Malley_____
John H. Zawadsky
WI State Bar ID No. 1008654
jzawadsky@reinhartlaw.com
Robert S. Driscoll
WI State Bar ID No. 1071461
rdriscoll@reinhartlaw.com
Katherine M. O'Malley
WI State Bar ID No. 1086597
komalley@reinhartlaw.com
Attorneys for Defendant PGA, Inc.
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202

Mailing Address:
P.O. Box 2965
Milwaukee, WI 53201-2965
Telephone:  414-298-1000
Facsimile:  414-298-8097

39880082