IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ERIK SINCLAIR and DAVID KRALL,
on behalf of themselves and all others
similarly situated,

                Plaintiffs,                OPINION AND ORDER

   v.

                                                    17-cv-224-wmc

PGA INC.,

                Defendant.

In this hybrid FLSA collective action and state labor law putative class action, plaintiffs Erik Sinclair and David Krall assert claims against defendant PGA, Inc., for: (1) a violation of the FLSA by failing to calculate a straight time average rate and pay overtime based on that rate, rather than the rate of pay for the work performed during overtime hours; and (2) a violation of state law by misclassifying employees as general laborers on prevailing wage projects.[1] By stipulation of the parties, the court previously conditionally certified an FLSA collective action on the first claim described above. (Dkt. #22.) Before the court are: (1) plaintiffs' motion for class certification of the state law claim (dkt. #34); and (2) defendant's motion to decertify the FLSA collective action (dkt. #43). The court will deny the motion for class certification because individual issues predominate over any common issues. The court will also decertify the FLSA collective action because no one has opted into that collective action, leaving the named individual plaintiffs to pursue claims.

---

[1] Plaintiff Sinclair also asserts an individual claim based on work performed on weekends, which is not relevant to the motions presently before the court.

BACKGROUND

In a related lawsuit, *Schilling v. PGA, Inc.*, No. 16-cv-202 (W.D. Wis. filed Apr. 1, 2016), the court denied plaintiffs leave to amend their complaint to add a claim challenging defendant's classification of employees on prevailing wage projects, finding that plaintiff unduly delayed in asserting that claim and defendant would be prejudiced by the addition of it so late in the procedural posture of that case. *Schilling*, No. 16-cv-202 (W.D. Wis. Apr. 16, 2017) (dkt. #61). The court similarly denied plaintiffs leave to add an individual claim on the part of plaintiff Sinclair based on weekend work on one project. Plaintiffs then filed the present lawsuit in state court, asserting those two state law claims but also asserting an FLSA claim based on the same "straight time average rate" theory pursued in the *Schilling* case under *state* law. The assertion of an FLSA claim provided the federal question jurisdictional hook for defendant to remove this case to federal court.

As mentioned above, the court already conditionally certified the FLSA collective action in this case by stipulation of the parties. However, *no* members opted into the FLSA collective action. Nevertheless, plaintiffs attempt to piggyback on the previous FLSA collective notice and opt-ins from the *Schilling* case. The court addresses this attempt below. As to their misclassification state law claim, plaintiffs seek to certify a class action as follows:

> All hourly employees who worked on a prevailing wage jobsite for PGA, Inc. during the time period on or after February 17, 2015.

(Pls.' Mot. (dkt. #34) 1.) In support, plaintiffs contend that defendant has a policy of classifying employees as and paying them at the rate of general laborers even though: (1)

they performed work "to make possible, support, or clean up skilled trade work by the employee or another member of the employee's work crew"; and (2) their work was sufficiently related to the skilled trades work to require PGA to pay them at the skilled trades' rate. (Pls.' Br. (dkt. #35) 2.) Plaintiffs acknowledge in their brief that this definition is significantly broader than that proposed in their complaint, which was limited to a class of employees who "received more than one wage rate during the same workweek for working on the same prevailing wage project." (1st Am. Compl. (dkt. #6) ¶ 24.)

PRELIMINARY ISSUES

Before addressing plaintiffs' motion to certify a state law class and defendant's motion to decertify the FLSA collective action, the court must address two preliminary issues. *First*, plaintiffs move for leave to file a second amended complaint, seeking to add Dale Mills as a plaintiff and replace David Krall as the class representative. (Dkt. #27.) Plaintiffs claim that Mills was paid at the general laborer rate, rather than the higher sheetmetal worker rate, for work that should have been classified as skilled trade work. Plaintiffs also argue that Mills would be a more suitable class representative, because his claim implicates how PGA calculated overtime, and represent that they filed the motion to amend promptly after learning of his willingness to serve as class representative.

In response to this motion, defendant claims that plaintiffs should have acted more diligently in seeking to amend their complaint to add a new plaintiff to replace Krall. Because the court is denying plaintiffs' motion for class certification, any argument that defendant would be prejudiced by the addition of Mills as a class representative is a non-starter. Moreover, the court finds that the proposed amendment to add Mills as a plaintiff

3

is not futile, plaintiffs did not unduly delay in seeking leave to amend and defendant is not unduly prejudiced by such an amendment. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) ("[C]ourts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile."). As such, the court will grant plaintiffs' motion.

*Second*, defendant moves to dismiss voluntarily its counterclaim for unjust enrichment against plaintiff Eric Sinclair. Defendant, however, seeks dismissal *without* prejudice. Not surprisingly, plaintiffs do not oppose the motion to dismiss, but contend that the dismissal should be *with* prejudice. Both parties point to Federal Rule of Civil Procedure 41(a)(2) and caselaw interpreting that rule in support of their respective arguments. However, because this motion only concerns a counterclaim, and not the entire action, Rule 41 does *not* apply. *See Taylor v. Brown*, 787 F.3d 851, 857 (7th Cir. 2015) ("Voluntary dismissal by court order under Rule 41(a)(2) allows the plaintiff to dismiss 'an action' on 'terms that the court considers proper.' . . . Although some courts have held otherwise, we've said that Rule 41(a) 'does not speak of dismissing one claim in a suit; it speaks of dismissing 'an action'—which is to say, the whole case.'").

Instead, Rule 15(a)(2) governs defendant's motions, although that rule also allows the court to impose conditions. *See generally* 6 Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 1486 at 693 (West 2010) ("The imposition of terms often will further the rule's liberal amendment policy. If the party opposing the amendment can be protected by

4

the use of conditions from any possible prejudice that might result from the untimeliness of the amendment, there is no justifiable reason for not allowing it."); *see also Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 849 (7th Cir.2002) ("A trial court may deny leave to amend when the amendment would cause the opposing party to bear additional discovery costs litigating a new issue and the moving party does not offer to reimburse the nonmoving party for its expenses.").

Here, defendant filed its answer and counterclaim roughly one year ago. Plaintiffs moved to dismiss the counterclaim, and while those efforts proved unsuccessful, plaintiffs invested resources in that motion. Moreover, Sinclair's individual claim touches on the same facts underlying defendant's unjust enrichment counterclaim. To allow Sinclair to continue to pursue his individual claim, including raising it in plaintiffs' motion for summary judgment, only to have to relitigate a counterclaim for unjust enrichment at a later time in a separate lawsuit is the definition of prejudice. *See, e.g., Consumer Fin. Prot. Bureau v. Mortg. Law Grp., LLP*, No. 14-CV-513-WMC, 2017 WL 3581146, at *4 (W.D. Wis. Apr. 19, 2017) ("This court agrees that dismissing Counts IX and X here without prejudice at this late stage of the case may result in undue prejudice to defendants."). As such, the court will require any dismissal of the counterclaim to be *with* prejudice. The court, however, will give defendant until November 6, 2018, to inform the court and plaintiffs whether it wishes to stand on its motion for leave to voluntarily dismiss its counterclaim, with that dismissal being with prejudice, or whether it wishes to withdraw its motion and continue to prosecute this counterclaim.

5

OPINION

I. Motion for Class Certification

A two-step analysis governs certification of a class action under Rule 23. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). First, a class must satisfy the four threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Id.* Second, the party seeking certification must satisfy one of the three alternatives under Rule 23(b). *Id.* The proponent of the class bears the burden of demonstrating that the class meets all of these requirements by a preponderance of the evidence. *Id.*

The trial court must itself engage in a "rigorous analysis" to determine that the requirements of Rule 23 have been satisfied. *CE Design, Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011). As a result, Rule 23 considerations may overlap with the merits of the case. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). Where they do, "the judge must make a preliminary inquiry into the merits." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). If material factual disputes exist, the court should even receive evidence and resolve those disputes before determining whether to certify the class, but "should not turn the class certification proceedings into a dress rehearsal for the merits." *Messner*, 669 F.3d at 811.

A. Rule 23(a) Requirements

i. Numerosity

The numerosity requirement is satisfied when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The parties stipulate that at

least 41 employees worked on prevailing wage projects during the relevant period of time. (Pls.' Br. (dkt. #35) 7 (citing Ho Decl., Ex. 5 (dkt. #39-5)).) "The Seventh Circuit has indicated that a group as small as forty may satisfy the numerosity requirement." *Armes v. Sogro, Inc.*, No. 08-C-0244, 2011 WL 1197537, at *2 (E.D. Wis. Mar. 29, 2011) (citing *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969)). This is consistent with "[t]he rule of thumb adopted in most courts . . . that proposed classes in excess of 40 generally satisfy the numerosity requirement." 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:5 (8th ed. 2011) (collecting cases). Accordingly, numerosity would be arguably, superficially satisfied, if barely.

While the parties have stipulated to over 40 employees working on prevailing wage projects during the relevant period of time, this definition appears to extend beyond the scope of the proposed class definition. Some of those 40 employees could have been paid at a skilled laborers rate for the entire time on the project, and, thus, fall outside of the scope of plaintiffs' theory; alternatively, some could have been classified and paid at the general laborers rate only for time accurately described as general laborer work. Plaintiffs acknowledge the breadth of the class definition, and in turn, the number of members included in that class, but argue that "[t]here is no need to complicate the definition of the class by only including in the class those employees who actually performed both General Laborer and Skilled Trade work on the same day on a prevailing wage project," citing to the Seventh Circuit's decision in *Bell v. PNC Bank National Association*, 800 F.3d 360, 380 (7th Cir. 2015).

While the *Bell* court held that "Plaintiffs need not prove that every member of the

proposed class has been harmed before the class can be certified," *id.*, a class definition must still fit the nature of the claim. Here, the actual class should at least be limited to employees paid at the general laborer rate for some of their working on prevailing wage projects. Even with that more limited definition, some of those employees would likely have been accurately classified as general laborers even under plaintiffs' theory. Thus, they would not be harmed by defendant's policy not to classify employees as skilled laborers who make possible, support or clean up after skilled labor.

The real problem is that plaintiffs appear to lack the necessary time and payroll records to make an exact determination as to numerosity. (Pls.' Br. (dkt. #35) 7.) While plaintiffs represent that defendant refused to provide this information, they *never* moved to compel this evidence. Because it is plaintiffs' burden to demonstrate the requirements of Rule 23, plaintiffs also have the burden to raise discovery disputes timely. The court need not rest a denial of class certification on the numerosity requirement alone -- nor, relatedly, on the inappropriate scope of the current class definition -- because, as explained below, plaintiffs' motion also fails under Rule 23(b)(3).

    ii.    **Commonality**

To satisfy the commonality requirement of Rule 23, plaintiffs must demonstrate there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A single, common issue will do, if it is "capable of classwide resolution, which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Dukes*, 564 U.S. at 350. Furthermore, the commonality standard requires that plaintiffs do more than "merely" demonstrate "that they have all

8

suffered a violation of the same provision of law." *Id.* (internal quotation marks omitted). Plaintiff must show that "the class members have suffered the same injury." *Id.*

Here, plaintiffs contend that "PGA has engaged in standardized conduct with respect to each class member: On each of its prevailing wage projects[,] PGA applied a uniform policy of requiring the employees to break out the work that they performed on different trades, regardless of whether work performed in one trade was related to work performed in other trades." (Pls.' Br. (dkt. #35) 8.) Plaintiffs further contend that this policy violates prevailing wage laws "because all work that makes possible, supports or cleans-up skilled trades work by the employee's own work crew are sufficiently related to the employee's own skilled trades work, so that cross classification rules cannot apply, and the employees must be paid at the skilled trades' rate for all such support work performed." (*Id.*)

In response, defendant argues extensively about the merits of plaintiffs' claim, attacking the theory to the extent it relies on a daily calculation of incidental work or precludes "helping-type" work from the definition of general laborer, and otherwise arguing that there is no support under state law for an obligation to pay skilled laborers wages to worker who make possible, support or clean up after skilled trade work. (Def.'s Opp'n (dkt. #53) 7-14.) This argument does not address, however, whether there is a common question with respect to: (1) whether a policy exists to classify employees as general laborers for work that makes possible, supports or cleans-up skilled trade work; and (2) whether that policy violates state prevailing wage laws regarding cross classification. As such, the court finds that plaintiffs have identified at least two common questions at least

9

arguably amenable to classwide proof.

### iii. Typicality

Typicality for Rule 23(a) purposes requires that a named plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). For this reason, typicality will often overlap with the commonality requirement. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Applied with care, however, the typicality standard should further ensure that "a plaintiff with typical claims will pursue his or her own self-interest in the litigation and in so doing will advance the interests of the class members, which are aligned with . . . those of the representative." *Insolia v. Phillip Morris, Inc.*, 186 F.R.D. 535, 544 (W.D. Wis. 1998) (quoting 1 Newberg & Conte, *Newberg on Class Actions* § 3.13 (3d ed. 1992)).

Plaintiffs contends that the named plaintiffs and proposed class representatives (Sinclair, Krall and Mills) were all subject to the same policy requiring them to keep track of their general laborer and skilled trades work while being paid at a general laborer rate for work that supported skilled trades work. In response, defendant again challenges whether there is a common, unlawful policy, but does not attack this typicality specifically. Instead, defendant focuses on the adequacy of plaintiff Sinclair, arguing that his claim is not typical, since his general laborer hours constitute more than 15% of his workweek and thus were properly subject to the cross-classification rule. However, this argument rests on whether defendant's classification of Sinclair's time spent on sheetmetal demolition as

general laborer work, rather than as skilled trade work, was correct, and, thus, does not form a basis for finding his claim not typical of other class members. (Pls.' Reply (dkt. #55) 14 n.7.)

    iv.    **Adequacy of Representation**

The adequacy requirement under Rule 23 is intended to ensure that "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A class representative is *not* adequate if he is subject to a defense to which other class members are not subject or could not prove the elements of the class claim for reasons particular to him. *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724-25 (7th Cir. 2011).

Defendant offers cursory challenges to the named plaintiffs' adequacy. For Sinclair, defendant simply regurgitates the same typicality argument addressed above. As for Krall, defendant argues that because his time working on the Harvey Hill project lasted approximately one month, the extent of his possible recovery is relatively small. While his limited term employment may well impact the extent of his damages, the fact that Krall initiated this lawsuit and sat for a deposition provides sufficient evidence of his interest in pursuing his own claims and those of a like class of employees. Finally, with respect to Mills, defendant offers no specific challenge, other than to note that at the time of plaintiffs' filing of their motion for class certification, Mills had not been added as a plaintiff. Having granted plaintiffs leave to add Mills, therefore, the court can find no reason to question his adequacy.

In addition to the named plaintiffs, courts are also required to determine whether

the proposed class counsel is adequate. *See Dukes*, 564 U.S. 338, 350 n.5 (explaining that adequacy "raises concerns about the competency of class counsel and conflicts of interest" (quoting *Falcon*, 457 U.S. at 157–158, n.13)). Here, defendant principally relies on its challenge to plaintiffs' counsel's adequacy raised in the *Schilling* case, though also mentioning the lack of any opt-ins for the FLSA collective action in this case as evidence of counsel's inadequacy. (Def.'s Opp'n (dkt. #53) 19-22.) While the court agrees with defendant that plaintiffs' counsel did commit some missteps in the *Schilling* case, none of them call into question counsel's competence for the same reasons provided in that case, nor do those missteps "create[] a serious doubt that counsel will represent the class loyally." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011); *see also Spoerle v. Kraft Foods Glob., Inc.*, 253 F.R.D. 434, 442 (W.D. Wis. 2008) (rejecting adequacy challenge to class counsel based on mistake of sending out a class notice without court approval).

### B. Rule 23(b)(3) Requirements

Having satisfied the four requirements of Rule 23(a), plaintiffs must also fulfill at least one of the requirements of Rule 23(b) for certification of a class action. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012). Here, plaintiffs move for certification under Rule 23(b)(3), which requires plaintiffs to show both that: (1) "questions of law and fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs' motion stumbles on both of these requirements.

### i. Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance inquiry is not satisfied if "individual questions . . . overwhelm questions common to the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013). Still, as the Seventh Circuit explained in *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 378-79 (7th Cir. 2015), the presence of individual questions -- such as the number of hours each employee worked -- do not necessarily render class certification inappropriate; rather, those issues would simply concern the amount of individual damages.

Here, plaintiffs' theory rests not just on the amount, but also on the *type* of work performed by each employee, and in particular whether that "support-type" work should be classified as skilled trade work or general laborer work. Plaintiffs present no credible argument or evidence as to how that question can be satisfied by classwide proof. Whatever constitutes "making possible, supporting or cleaning up after skilled laborers" is not the type of black and white question that could be resolved as to a group of employees. In other words, this is not a case where the putative class members are performing the same work and the employer is, for example, classifying them as independent contractors rather than employees. *See Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1060 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 2289 (2017) (affirming certification of class of delivery drivers claiming that they should have been classified as employees rather than independent contractors). Instead, any arguable violation of state law for incorrectly classifying certain work as

13

general laborer work, rather than skilled trade work, would necessarily require an individual determination of whether an employee's work on a specific week, day and even hour made possible, supported or cleaned up after a skilled trade worker.

Of course, this assumes such work should have been classified as skilled trade work and paid at that higher rate, which is arguably a common question of law, but one that can only be reached based on each plaintiff's unique work history. In *Bell*, the plaintiffs pursued a claim that their employer had an unofficial policy of "either prohibit[ing] or discourag[ing] PNC employees from seeking overtime pay." 800 F.3d at 378. The Seventh Circuit found that plaintiffs could prove such a policy on a classwide basis, and it would make "no difference to the class claim as a whole how many hours of off-the-clock work each employee worked or the intent of the manager." *Id.* at 379. While recognizing that the number of hours of unpaid overtime would be pertinent to a determination of damages, the court instructed that those individual issues do not predominate over the common liability questions. *Id.* Similarly, in the related *Schilling* case, this court found the common questions of whether PGA had a policy of excluding the cash fringe payment from the overtime rate calculation, and whether that policy violated state law, predominated over any individual questions.

Still, the same cannot be said here. While plaintiffs could prove on a classwide basis that PGA had a policy of breaking out work into different trades, whether that policy violates state law would necessarily require individual determinations of the degree of "relatedness" between the work classified by PGA as general laborer work and any skilled trade work proffered by the individual worker. These type of individual questions are not

amenable to class treatment, and liability would turn on the answer to those individual questions. *See Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) ("If resolving a common issue will not greatly simplify the litigation to judgment or settlement of claims of hundred or thousands of claimants, the complications, the unwieldiness, the delay, and the danger that class treatment would expose the defendant or defendants to settlement-forcing risk are not costs worth incurring."); *see also Dukes*, 564 U.S. at 351 ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." (internal citation and quotation marks omitted)). As such, the court concludes that the predominance requirement of Federal Rule of Civil Procedure 23(b)(3) is not satisfied.

  ii. **Superiority**

The court must also determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Relevant matters for consideration include class members' interests in individually litigating their claims; the extent and nature of competing litigation; the desirability of concentrating the litigation in the particular forum; and the likely difficulties of managing a class action. *Id.* Ultimately, the case must be one "in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods.*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3) advisory committee note to 1966 Amendment).

15

For the same reasons numerosity and predominance are not satisfied, the court further finds that a class action is not a superior method of resolving a fairly limited number of individualized employee claims. Whether a policy of breaking out general laborer work exists is a relatively small and contained portion of the liability question; instead, for the reasons described above, the focus will be on examining an individual employee's unique work on an hourly, daily or weekly basis, and determining whether that work should be more appropriately characterized as support work for a skilled trade laborer for purposes of state employment law. Not only would there be significant difficulties in managing that class action, but it is not clear what, if any, economies of scale would be achieved.

Accordingly, the court will deny plaintiffs' motion for class certification. Of course, the individual plaintiffs may continue to pursue their state law claims based on the misclassification of their work on prevailing wage jobs as general laborer work.

## II. Motion to Decertify FLSA Collective Action

Often in hybrid cases, plaintiffs pursue claims under the FLSA and state law based on the same theory (e.g., that defendant's method of calculating overtime violates both state law and FLSA). Here, the state law claim described above is separate from the FLSA collective action claim pursued in this case. Instead, the FLSA claim is based on the same theory pursued in the *Schilling* case for a violation of state law, namely that defendant's method of calculating overtime using the rate of pay for the hours worked during overtime rather than a straight time average violates the law. Defendant seeks to decertify the collective action primarily based on the fact that *no* employees opted into the class.

In response, plaintiffs argue that the "interrelated FLSA claims advanced in cases

16

16-CV-202 [Schilling] and 17-CV-224 [this case] form a single action, so that Plaintiffs had no need to file a second consent form to join the same action." (Pls.' Opp'n (dkt. #41).) But that is not the case. In *Schilling*, plaintiffs pursued an FLSA claim based on defendant's failure to include the "cash fringe" payment in the overtime premium rate. The notice provided to PGA employees explained this theory. (Pls.' Proposed Notice (dkt. #23-2); 11/3/16 Order Adopting Pls.' Proposed Notice (dkt. #24).) Critically, this case (and the FLSA claim alleged in it) had not even been filed at the time plaintiffs mailed the notice to the collective action members and received those opt-ins. As such, plaintiffs' argument that the opt-ins submitted in the *Schilling* case should apply to the distinct FLSA claim presented in this case lacks merit.

To hold otherwise would completely undermine the purpose of the opt-in -- to allow putative collective action members to consider the merits of participating in that collective action, and thereby agreeing to bind themselves to the result of the collective action and waive any individual claim. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action [under the FLSA] unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). If anything, counsel's argument provides further support for defendant's concern about the adequacy of their representation. Why would plaintiffs' counsel ever argue for *un*knowing

participation in a collective action?[2]

As such, the court will grant the motion to decertify, finding that the lack of opt-ins undermines the entire purpose of a collective action. The named plaintiffs, of course, are free to pursue the FLSA claim on an individual basis.

ORDER

IT IS ORDERED that:

1) Plaintiffs' motion for leave to file second amended complaint (dkt. #27) is GRANTED.

2) Plaintiffs' motion to certify class under Rule 23 (dkt. #34) is DENIED.

3) Defendant's motion to decertify the FLSA collective action (dkt. #43) is GRANTED.

4) Defendant's motion to voluntarily dismiss its counterclaim without prejudice (dkt. #61) is RESERVED. On or before November 6, 2018, defendant should inform this court whether it either agrees to dismissal *with* prejudice or wishes to withdraw its motion and continue to prosecute its counterclaim.

---

[2] Perhaps the opt-in plaintiffs in *Schilling* did not submit an opt-in form in this case based on an erroneous belief that their opt-in form also covered the claim at issue here. If that is the case, plaintiffs' counsel failed to articulate that belief, or provide any basis for it. To the extent this theory is accurate, plaintiffs could seek reconsideration of the court's decision to decertify the FLSA collective action. In doing so, however, plaintiffs should submit declarations on the part of these individuals -- from the court's review of the original complaint in this case, it appears plaintiffs attached about ten opt-in forms to that complaint -- averring that they intended for their opt-in forms submitted in the *Schilling* case to also cover the FLSA claim at issue here.

5) Having never submitted an opt-in form to join the FLSA collective action at issue in this case, the clerk of court is directed the terminate the following individuals as plaintiffs: Eric Schilling, Blaine Krohn, Douglas P. Bannister, Wyly D. Schiebe, Ryan W. Bergeman, Jeremy R. Buck and Timothy J. Danley.

Entered this 30th day of October, 2018.

                BY THE COURT:

                /s/
                _____
                WILLIAM M. CONLEY
                District Judge