ERIK SINCLAIR, DAVID KRALL, and
DALE MILLS,

                              Plaintiffs,                    OPINION AND ORDER

        v.                                                  17-cv-224-wmc

PGA INC.,

                              Defendant.

Plaintiffs Erik Sinclair, David Krall and Dale Mills assert claims against defendant

PGA, Inc., for violations of: (1) the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, by

failing to calculate a straight time average rate and pay plaintiffs' overtime based on that

rate (the so-called "blended rate method") and instead using their rate of pay for the work

performed during overtime hours (the so-called "rate in effect method); (2) Wisconsin wage

law by misclassifying plaintiffs as general laborers on prevailing wage projects, rather than

using the higher wage rate for "incidental" work; and (3) state wage law *and* the FLSA by

failing to pay plaintiff Sinclair for work performed on weekends. In a prior opinion and

order, this court denied plaintiffs' motion for leave to certify a class pursuant to Rule 23

on the state law claims and granted defendant's motion for leave to decertify the

conditionally-certified collective action for the FLSA claims. (Dkt. #95.)[1] As such, the

claims at issue are being pursued solely as to the three named plaintiffs.

---

[1] Plaintiffs recently filed a motion for reconsideration of that denial (dkt. #99), which the court
will also deny, again finding that plaintiffs' claims were not amenable to class-wide proof or failed
to satisfy another requirement of Federal Rule of Civil Procedure 23. Still, the court does address
one aspect of plaintiffs' reconsideration motion below, based on the argument that their straight-
forward incidental work claim may be amenable to common proof. *See infra* Opinion § II.

Pending before the court now are the parties' cross-motions for summary judgment. (Dkt. ##65, 69.) For the reasons that follow, the court will grant in part and deny in part both motions. More specifically, plaintiffs' motion will be granted as to: (1) Sinclair's claim that defendant violated the FLSA by failing to calculate his overtime rate based on the blended rate method for the week of July 20-24, 2015; (2) Krall's and Mills' claim that defendant violated § DWD 290.03(3) by failing to pay each at the sheetmetal rate for hours spent performing incidental general laborer work for one week each; and (3) plaintiffs' argument that the statute of limitations for the state law claims should extend back to November 17, 2014. In contrast, defendants' motion will be granted with respect to: (1) Krall's claim under the FLSA; and (2) plaintiffs' state law prevailing wage claim based on the "separate and distinct" theory. In all other respects, both side's motions will be denied.

## UNDISPUTED FACTS

### A. Background

Defendant PGA, Inc., is a Wisconsin corporation that performs plumbing, heating, cooling, electrical and excavating work on prevailing and non-prevailing wage projects throughout Wisconsin. PGA's employees may receive different pay rates depending upon the specific kinds of work they performed that week. If an employee's work varies during a particular week, then PGA's presumptive method for determining the overtime premium is the so-called "blended rate method," which involves calculating the average hourly

straight time wage rate for that week.[2]  In other words, PGA would multiply the number of hours at an appropriate rate for that work, add it to the number of hours at a second rate multiplied by that second rate, and then divide that total number by the total number of hours worked.  However, PGA also sometimes uses the rate in effect method, paying overtime based on rate for the work actually performed during the overtime hours under the, purported agreements with its employees.

## B.  Plaintiffs' Overtime Compensation

While plaintiff Erik Sinclair was working on PGA's Harvey Hall Project during July and August 2015, he was paid at the rates of $24.21 per hour for his general laborer work and $28.05 per hour for sheetmetal work.[3]  For the week of July 20-24, 2015, Sinclair was paid for 39 hours of general laborer work at $24.21 per hour and 9 hours of sheetmetal work at $28.05 per hour.  His average hourly straight time wage rate for the workweek, calculated as (($24.21x39)+($28.05x9))/48, was $24.93.  However, Sinclair was paid overtime for 8 hours at the general laborer rate of $24.21.

Sinclair avers that "the entire time that I worked for PGA, Inc., no one explained to

---

[2] Plaintiffs also submit proposed findings of fact about defendant's failure to include the cash fringe in calculating the overtime payment.  Because the court concluded that there is no requirement under state or federal law to include the cash fringe in calculating the overtime premium in *Schilling*, the court declines to include these facts.

[3] Defendant purports to dispute this fact and others concerning *Sinclair's* pay rates specifically on the basis that the evidence cited in support was solely for plaintiff David Krall's timecard.  Not so. Plaintiff cites to dkt. #39-1 in support, which *is* the timecard for Sinclair from January 2015 through August 2015, while Krall's timecard for the same period is available at dkt. #39-3.  Since both timecards appear to have been kept by *defendant* in the ordinary course of business and appear not just the best, but only evidence of the breakdown in work payments, neither defendant nor a reasonable trier of fact would appear to have any basis to reject them on their face.

myself, or to anyone else that I know of, as to how our overtime pay would be computed." (Sinclair Decl. (dkt. #13) ¶ 2.)[4]  The court infers that Sinclair is challenging defendant's contention that he had agreed to be paid at the rate for the kind of work being performed during overtime hours.  Similarly, the court understands that PGA purports to dispute this lack of agreement based on a declaration by Tom Barnetzke, defendant's Chief Financial Officer, filed in the *Schilling* case, in which he avers generally that:

> There may be instances . . . in which the employee worked only one trade during the forty hours of the week on a prevailing wage job, and then worked on a non-prevailing wage job during the overtime hours at the end of the week.  Such a case would be an example of when PGA would use the separate rate (or "rate in effect") method to calculate overtime pursuant to an advance agreement between PGA and the employee because the employee's overtime premium would not be subject to blending.

(Barnetzke Decl. (dkt. #84) ¶ 11.)  Defendant stops short, however, of directing the court to an *actual* agreement with plaintiff Sinclair (or anyone else for that matter).[5]  Moreover, since all of Sinclair's work the week of July 20-24 appears to be on a prevailing wage job,

---

[4] Defendant objects to this finding on the basis that what PGA may have told other employees is not admissible evidence in support of other employees' knowledge.  (Def.'s Resp. to Pls.' PFOFs (dkt. #83) ¶ 12.)  The court agrees that Sinclair lacks personal knowledge as to what other employees understood (or were told outside his presence) about PGA's method of calculating overtime pay, but his averment simply says that *he* is not aware of PGA ever communicating the method of overtime premium calculating, whether to himself or to another employee, and that much falls within his personal knowledge.

[5] Defendant also points to Barnetzke's 30(b)(6) deposition testimony, but that section of his deposition concerned managers communicating to employees the breaking out of general laborer work from sheetmetal work or steamfitter work on their timecards, *not* the method for calculating an overtime premium.  (Barnetzke 30(b)(6) Dep. (dkt. #39) 64-65.)  Defendant also cites to Ex. 4, which the court presumes is an exhibit to Barnetzke's deposition, but defendant failed to submit it or, if it has been filed, meaningfully direct the court to it.

Barnetzke's example of use of the rate in effect method is inapplicable.[6]

## C. Alleged Misclassification of Work Type

On a non-prevailing wage project, a PGA employee generally receives the same wage rate regardless of what type of work the employee performs on that job. In contrast, on a prevailing wage project, a PGA employee could receive a different wage rate based on the type of work performed. Indeed, PGA maintains a policy requiring employees on prevailing wage jobs to report separately what work they performed in different trade classifications during a given workweek, purportedly as required by the Wisconsin Department of Workforce Development.

Plaintiffs maintain that when they initially worked on the Harvey Hall project -- a prevailing wage project that involved removing an old HVAC system and replacing it with a new one -- they recorded all of their activities as sheetmetal work.[7] Defendant disputes this, directing the court to Barnetzke's declaration that "[a]s a matter of general practice, PGA employees were instructed, from the beginning of the Harvey Hall project, to track their hours performing sheetmetal work and their hours performing General Laborer work." (Barnetzke Decl. (dkt. #85) ¶ 2.) The distinction is material, since the rate of pay for general laborer work was $3.84 per hour less than that for sheetmetal work.

At some point in December 2014 or January 2015, plaintiffs each aver that foremen

---

[6] Defendant seeks summary judgment as to Krall's FLSA overtime claim based on the undisputed fact that he never worked overtime hours while employed by PGA. Plaintiffs do not dispute this fact, nor this aspect of defendant's motion. Plaintiffs also submitted no facts about plaintiff Dale Mills' overtime calculations.

[7] PGA defines duct work as synonymous with sheetmetal work.

Steve Bailey and Jake Knetter explained that "their work on a ladder installing sheetmetal should be recorded as 'install' or Sheetmetal work hours, while all of their other work hours should be recorded as General Laborer hours." (Pls.' PFOFs (dkt. #67) ¶ 15.) Specifically, plaintiffs contend that this instruction required them to record time spent assembling sheetmetal as general laborer time. While defendant disputes that Bailey and Knetter were "foremen," there is no dispute that they were the two supervisors on the Harvey Hall Project. Putting aside the proper label, Bailey denies in his own declaration that he ever "informed employees that work on a ladder was Sheetmetal work and all other work was General Laborer work." (Bailey Decl. (dkt. #86) ¶ 3.)

Regardless, plaintiffs recorded as general laborer hours time spent demolishing sheetmetal, unloading trucks, moving materials, assembling sheetmetal and cleaning up jobsites. Defendant purports to dispute this fact on the basis that the record evidence does not support it -- directing the court to *other* paragraphs of plaintiffs' respective declarations (Def.'s Resp. to Pls.' PFOFs (dkt. #83) ¶ 19) -- but each plaintiff averred that they recorded these duties as "general laborer" work. (Sinclair Decl. (dkt. #36) ¶ 7; Krall Decl. (dkt. #37) ¶ 5; Mills Decl. (dkt. #38) ¶ 5.) More importantly, in responding to plaintiffs' proposed finding, defendant only disputes that plaintiffs were *instructed* by PGA employees to record time assembling sheetmetal as general laborer time. (Barnetzke Decl. (dkt. #85) ¶ 3 ("PGA considers time spent assembling sheetmetal on site to be sheetmetal work as opposed to General Laborer work and would not have instructed employees to classify assembly work conducted on site at a prevailing wage project as General Laborer work.").)

At the end of their employment with PGA, some two years before filing this lawsuit,

plaintiffs Krall and Mills were paid at the sheetmetal rate for more than 85% of their total hours for the following weeks:

- February 23-25, 2015, Krall was paid for 26 hours at the sheetmetal rate and 3 hours at the general laborer rate.

- March 3-6, 2015, Mills was paid for 35.5 hours at the sheetmetal rate and 3 hours at the general laborer rate. [8]

### D. Plaintiff Sinclair's Weekend Work

In early November 2014, Steve Bailey asked for a volunteer to come to the Harvey Hall jobsite on weekends to make sure that the heating system was working properly. Bailey said that this volunteer would be paid. Plaintiff Sinclair represents that he volunteered for the job after Bailey told him that he would be paid for one hour, consisting of 30 minutes of drive time and 30 minutes touring the job site, assuming his inspection found no issues. For each of the following 16 or 17 weeks between November 2014 and March 2015, on both Saturdays and Sundays, Sinclair inspected the heater at the jobsite. Except for a couple of instances when Sinclair had to respond to issues related to a boiler failure and a main line break, Bailey's estimated one-hour timeframe proved accurate. For each weekend that Sinclair checked the heater, he would turn in a sheet of paper to either Knetter or Bailey documenting his work on that weekend, including his driving time. Relying on Bailey's statement in his declaration that he "do[es] not recall Erik submitting any time sheets or time recorded on scrap paper to me for the weekend work," defendant

---

[8] Plaintiffs also submit facts asserting that the "majority" of their hours were paid at the sheetmetal rate, but that fact does not further their state law prevailing wage claim. Instead, as explained below, the relevant threshold is whether plaintiffs were paid at the sheetmetal rate for more than 85% of their total hours (or, stated otherwise, at the general laborer rate for less than 15% of their time).

disputes this. (Bailey Decl. (dkt. #86) ¶ 11.)

Regardless, except for five hours of pay Sinclair received the day after Thanksgiving, November 28, 2014, Sinclair maintains that he was not paid for any of this weekend work. Again, relying on Bailey's declaration, defendant disputes that he was not paid. In fact, Bailey avers that for his weekend work, Sinclair and he agreed that Sinclair would be paid "as though he worked three hours," and further agreed that he "would be paid for this time by adding hours to Friday that weren't physically worked." (Bailey Decl. (dkt. #86) ¶¶ 8-9.) As such, "Fridays on which Erik claimed to have worked four hours, he would have only worked one hour on the worksite on Friday and the remaining hours would have been paid from his weekend work." (*Id.* at ¶ 10.) In contrast, Sinclair responds that there was only one instance where his time spent on the weekend work was included in his Friday hours.

As part of his claim for weekend work, Sinclair also asserts that defendant failed to pay him overtime for these hours. For the majority of the weeks Sinclair worked at the Harvey Hall project between November 2014 and March 2015, he was paid exactly 40 hours. Therefore, his two hours of weekend work should have constituted overtime. Defendant disputes this only to the extent that there were "numerous weeks" during this period of time when Sinclair was not paid for exactly 40 hours of work.

OPINION

In their motion, plaintiffs seek summary judgment on: (1) their claim that PGA violated the FLSA in failing to use the blended rate method in calculating overtime; (2) their claim that PGA violated Wisconsin state law in paying the general laborer rate, rather

than the rate for the specific type of work being performed;[9] and (3) plaintiff Sinclair's claim that PGA failed to pay him in full for his weekend work on the Harvey Hall Project. In its motion, defendant seeks summary judgment on: (1) any claim under the FLSA beyond a two-year statute of limitation, rather than three-year, because plaintiffs cannot demonstrate the violation was willful; and (2) any claim under state law premised on plaintiffs' "separate and distinct" theory. The court addresses each of the parties' arguments in order below, understanding that defendant's latter argument overlaps with plaintiffs' motion on the same state law claim.

## I. FLSA Claim Based on Overtime Rate Calculation

Under the FLSA, employers are required to pay their employees for any time over forty hours at a "rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Under 28 C.F.R. § 778.109, "regular rate of pay" is calculated "by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." As such, plaintiffs maintain that defendant was required to use this "blended rate method" to calculate the overtime rate, and move for a finding of liability as to their claim that defendant violated the FLSA by calculating their overtime rate based only on the rate for work then being performed or "rate in effect method."

In particular, plaintiffs submitted evidence that for the week of July 20-24, 2015,

_____

[9] Plaintiffs also pursue a ruling on any statute of limitations claim with respect to the state law claims.

Sinclair was paid for 39 hours of general laborer work at $24.21 per hour and nine hours of sheetmetal work at $28.05 per hour. Therefore, his average hourly straight time wage rate for that workweek was $24.93 ((($24.21x39)+($28.05x9))/48). However, since Sinclair was paid overtime for eight hours at the general laborer rate of $24.21, he appears to have been underpaid by $8.64 (($.72x8)x1.5). Plaintiffs submitted no evidence, however, to support their claim that plaintiff Mills was paid overtime hours based on the same rate in effect method.

There are, however, exceptions, one of which defendant maintains is applicable here.[10] Under § 207(g)(2),

> No employer shall be deemed to have violated subsection (a) . . . if, pursuant to an *agreement or understanding* arrived at between the employer and the employee before performance of the work, the amount paid to the employee for the number of hours worked by him in such workweek in excess of the maximum workweek applicable to such employee under such subsection--
> . . .
>
> (2) in the case of an employee performing two or more kinds of work for which different hourly or piece rates have been established, is computed at rates not less than one and one-half times such *bona fide rates applicable to the same work when performed during nonovertime hours*.

29 U.S.C. § 207(g)(2) (emphasis added).

---

[10] Plaintiffs refers to this as an "exemption," rather than an exception, but courts appear to use the two terms interchangeably in discussing § 207(g)(2). Regardless of nomenclature, plaintiffs argue that this exception does not apply because defendant was obligated to include a cash fringe payment in the overtime rate calculation. (Pls.' Opening Br. (dkt. #66) 6 (citing 29 U.S.C. § 207(g) (providing that exemption only applies if "extra overtime compensation is properly computed and paid on other forms of additional pay required to be included in computing the regular rate")).) In light of the court's decision in *Schilling* that there was no requirement under Wisconsin state law or the FLSA to include cash fringe in the overtime rate calculation, this argument is moot.

Before this exception applies, the defendant must prove the existence of an agreement or understanding with an employee to pay at the rate worked during the overtime hours. *See, e.g.*, *Pennington v. G.H. Herrmann Funeral Homes, Inc.*, No. 1:09-cv-390-RLY-DML, 2010 WL 3326815, at *4 (S.D. Ind. Aug. 23, 2010) (holding that the employer bears the burden of demonstrating entitlement to the § 207(g)(2) exemption); *Mathias v. Addison Fire Prot. Dist. No. 1*, 43 F. Supp. 2d 916, 920 (N.D. Ill. 1999) (same); *cf. Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974) (holding generally that employer has burden of showing exception to FLSA).

Here, Sinclair avers that he was never notified of this arrangement. In response, defendant argues that the case law does not require a "formal agreement." (Def.'s Opp'n (dkt. #82) 5.) While this much is true, the limited caselaw discussing this exception under § 207(g)(2) appears to require that, at minimum, the employer notify the employee of its plan to use the rate in effect method. *See Townsend v. Mercy Hosp. of Pittsburgh*, 862 F.2d 1009, 1011 (3d Cir. 1988) (finding agreement where "[e]ach employee was notified of and implicitly agreed to this arrangement as part of the terms and conditions of employment"); *Barbarato v. Knightsbridge Props.*, No. 14-cv-7043(JS)(SIL), 2017 WL 9485716, at *9 (E.D.N.Y. Aug. 7, 2017) (for § 207(g)(2) exemption to apply, there must be evidence to support a finding that employee intended to enter into an agreement and understood its terms) (citing *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012)). Assuming this minimum proof, defendants offers nothing to suggest Sinclair had knowledge as to how the overtime rate was calculated, much less formal notice.

Defendant also argues that Sinclair lacks personal knowledge to aver as to other

employees' lack of knowledge of any agreements or understandings with PGA to be paid overtime at the rate in effect method, but this arguable deficiency obviously does *not* confront Sinclair's representation that there was no agreement or understanding between PGA and himself for payment of overtime based on the rate in effect method. Similarly, defendant points to an email it sent to employees on another prevailing wage job, stating that the overtime hours worked on Fridays would be paid based on the employees' normal base rate of pay. Here, too, this evidence and argument begs the question whether PGA had an agreement or understanding *with Sinclair*.

Because defendant bears the burden of proof as to the application of this exception, defendant was obligated to come forward with evidence demonstrating a genuine issue of material fact as to the application of § 207(g)(2). *See Nichols v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 509 F. Supp. 2d 752, 760 (W.D. Wis. 2007) ("[S]ummary judgment is 'not a dress rehearsal or practice run,' but the 'put up or shut up moment' in which a proponent of facts must show what evidence it has to convince a trier of fact to accept its version of events." (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). With respect to plaintiff Sinclair's overtime claim, therefore, defendant has failed to meet its burden. As such, the court will grant judgment to plaintiff Sinclair on his FLSA overtime rate claim, although Sinclair's damages appear to be limited to $8.64, plus liquidated damages.

As for Mills, plaintiffs submitted *no* evidence to support his FLSA claim. Specifically, plaintiffs failed to develop any evidence to show that Mills was paid overtime based on the rate in effect method. Absent such evidence, there was no need for defendant

to prove that the § 207(g)(2) exception applies. As a result, the court must deny plaintiff's motion for summary judgment. Given that defendant did not move on this claim, at least with respect to liability, Mills remains free to pursue this claim at trial, just as defendant can still produce any evidence of an agreement or understanding to support a § 207(g)(2) exception.[11]

As noted, the defendant *did* move for summary judgment that any FLSA claim be limited to a two-year statute of limitations, rather than the three-year statute of limitations provided for "willful" violations under 29 U.S.C. § 255(a). With respect to the named plaintiffs, the only apparent violation occurred in July 2015, which would fall within the two-year statute of limitations (this case having been filed in March 2017), making the motion moot. If plaintiffs come forward with additional alleged violations between March 2014 and March 2015 -- the difference between the two-year and three-year statute of limitations -- then defendant is welcome to renew its motion at that time. The court, however, notes that plaintiffs will bear the burden of demonstrating willfulness. *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986) (holding that burden is on plaintiff to show willful violation under FLSA). Given defendant's evidence of its extensive contact with the Wisconsin Department of Workforce Development to confirm that the rate in effect method was appropriate, plaintiffs would appear hard-pressed to demonstrate that PGA either knew or showed reckless disregard as to the requirements of the FLSA.

---

[11] Obviously, given the apparent, limited stakes that remain on this issue, the court would encourage Mills and the defendant to reach some understanding based on the record as they now know it to be, rather than incur the costs of trial, or at least ripen any remaining dispute through a motion *in limine*.

*See E.E.O.C. v. O'Grady*, 857 F.2d 383, 387 (7th Cir. 1988) (describing "willful" standard under FLSA).

## II. State Law Incidental Work / Misclassification Claim

Plaintiffs' state law claim challenges defendant's categorization of some of their work as "general laborer," rather than "sheetmetal" or skilled trade work, and seeks payments at the higher applicable rate. This claim touches on, while appearing to reach beyond, Wisconsin Administrative Code § DWD 290.03(3), which provides in pertinent part:

> (3) A laborer, worker, mechanic or truck driver that performs work in more than one occupational classification during a given work week shall be cross-classified and compensated for all work performed in each classification, unless work other than the primary classification is incidental work. Incidental work shall be compensated at the higher primary classification prevailing wage rate.

"Incidental work" is defined under Wisconsin Administrative Code § DWD 290.01(10m) as:

> work performed in a classification other than an employee's primary classification that is paid a lower prevailing wage rate and performed for 15% or less of the employee's time spent working on a particular project of public works or a particular publicly funded private construction project during a given work week.

As best as the court can surmise, plaintiffs pursue three theories in support of this state law claim. *First*, plaintiffs present evidence and defendant does not dispute that it violated § DWD 290.03(3) by failing to pay plaintiffs Krall and Mills at the sheetmetal rate for hours spent performing incidental general laborer work for one week each. (Def.'s

Opp'n (dkt. #82) 9 (conceding that Krall is entitled to three hours of pay at the sheetmetal rate for the week of February 23-26, 2015, and Mills is entitled to three hours of work at the sheetmetal rate for the week of March 3-6, 2015).) As detailed above, for the week of February 23-26, 2015, Krall spent three hours, approximately 10% of his workweek, on general laborer work, with the remaining 90% on sheetmetal work, and therefore should have been paid at the sheetmetal rate rather than the general laborer rate for those three hours. Similarly, for the week of March 3-6, 2015, Mills worked three hours as a general laborer, approximately 8% of his workweek, with the remaining 92% of his time on sheetmetal work, and therefore, he too should have been paid at the sheetmetal rate for those three hours. By the court's math, assuming a $24.21 hourly rate for general laborer work, and $28.05 hourly rate for sheetmetal work, plaintiffs Krall and Mills are each owed $11.52.

As described above, the court previously denied class certification of plaintiffs' state law claim, among other things, finding that individual issues predominated over common issues. Recently, plaintiffs filed a motion for reconsideration of that decision. (Pls.' Mot. (dkt. #99).) While the court sees no reason to reconsider the denial with respect to any claim based on improper classification of employees' work,[12] plaintiffs' motion does raise a question as to whether a straight-forward, incidental work claim is amenable to class-wide proof. Specifically, timesheets submitted in support of the motion for reconsideration reveal a handful of employees who appear to have been paid at the general laborer rate

---

[12] Specifically, plaintiffs fail to explain -- and the court is unable to discern -- how timesheets would reveal the nature of employees' work to support a claim that as a class, they were misclassified as general laborers.

despite that work representing less than 15% of total hours for a given workweek. (Ho Decl., Ex. (dkt. #102).)

Still, those same timesheets reveal at most 19 employees who allocated their time between a skilled laborer rate and a general laborer rate, and, by the court's review, only *six* employees, including Mills, who spent less than 15% of their time on general laborer work during one or more weeks. (*Id.*) Even if the predominance requirement were now satisfied among those few workers, therefore, the numerosity requirement of Federal Rule of Civil Procedure 23(a) would not be. Accordingly, the court will deny the motion for reconsideration, but might entertain a prompt motion to amend the complaint to add Doug Banister, Logan Baur (or Bauer -- his name is spelled both ways on the timesheets), Ryan Iczkowski, Luke Nowak, and Michael Nowak as plaintiffs, assuming plaintiffs' counsel is authorized to represent them on asserting a straight-forward Wis. Admin. Code § DWD 290.03(3) incidental work claim.

*Second*, plaintiffs argue that their time spent assembling sheetmetal for installation should have been classified as sheetmetal work, rather than general laborer work, and, therefore, they should have been paid at the higher rate. In support, plaintiffs direct the court to the DWD's Occupational Dictionary, which includes assembling of duct work within the "typical duties" of a sheetmetal worker. (O'Malley Decl., Ex. B (dkt. #54-2) 3.) In response, defendant does not dispute that time spent assembling sheetmetal should be so classified and paid. Instead, defendant disputes that plaintiffs were ever told to record assembly work as general laborer work.

More specifically, defendant relies on (1) its CFO's declaration that PGA "would

not have instructed employees to classify assembly work conducted on site at a prevailing wage project as General Laborer work" (Barnetzke Decl. (dkt. #85) ¶ 3), and (2) supervisor Bailey averment that he never instructed employees to record time (other than that spent on a ladder) as general laborer work (Bailey Decl. (dkt. #86) ¶ 3). With respect to this aspect of plaintiff's state law claim, there is a factual dispute as to whether plaintiffs were instructed to record sheetmetal assembly work as general laborer work. Moreover, plaintiffs have failed to direct the court to any records when and for how many hours plaintiffs misclassified their time, or to otherwise quantify this claim. As such, a trial to the bench will be necessary to determine liability and damages as to this claim.[13]

*Third*, plaintiffs argue more broadly that "cross classification" as defined under § DWD 290.03(3) only applies "when the duties performed by each classification are separate and distinct," directing the court to a DWD Q&A from 2012, in which the DWD purportedly used "separate and distinct" language. (Pls.' Opening Br. (dkt. #66) 11.) Plaintiffs do not provide a hard copy of this guidance; instead, they simply include a link to the DWD website in their brief, but even correcting for the obvious mistype of "hhtps" instead of "https," the link does not work. From this, plaintiffs argue -- without citing any support -- that (1) time spent supporting or assisting sheetmetal work is not "separate or distinct" from the sheetmetal work itself and, therefore, cross classification does not apply, and (2) employees should have been paid at the higher sheetmetal rate for *all* hours.

Putting aside the obvious lack of evidence, however, the fact that it was *possible* for

---

[13] Again, the parties are encouraged to resolve or ripen this issue in advance of trial, if possible, given the apparent stakes.

plaintiffs to record their time in the two work categories appears to doom plaintiffs' argument that cross classification cannot apply since the general laborer work was not "separate and distinct." To the contrary, plaintiffs were capable of isolating and recording hours spent on such work. Plaintiffs appear to argue that the fact that the general laborer work was connected to or related to the sheetmetal work means that cross classification should not apply, but they cite *no* support for an argument that work happening on the same worksite, supporting the same building project, would render cross classification inapplicable. To the contrary, a plain reading of the regulation would support defendant's practice: on prevailing wage projects, if employees are performing duties in more than one trade classifications, they should record their time in each and be paid at the respective rates, unless the amount of time spent on the lower-paid rate is less than 15% of their total time in a given workweek. As such, the court will grant defendant summary judgment on this aspect of plaintiff's state law claim.

In addition to their three theories of recovery, plaintiffs finally seek a ruling that they can recover on this state law claim back to November 17, 2014 -- two years from the date they filed a motion to amend their complaint in the *Schilling* case. (Pls.' Opening Br. (dkt. #66) 13.) In support, plaintiffs direct the court to *Moore v. State of Indiana*, 999 F.2d 1125 (7th Cir. 1993), in which the Seventh Circuit explained:

> As a party has no control over when a court renders its decision regarding the proposed amended complaint, the submission of a motion for leave to amend, properly accompanied by the proposed amended complaint that provides notice of the substance of those amendments, tolls the statute of limitations, even though technically the amended complaint will not be filed until the court rules on the motion.

*Id.* at 1131. In *Moore*, however, the court was considering a motion for leave to amend that was *granted*. Here, defendant argues that because the court denied leave in *Schilling*, the state law claim at issue in this case was effectively dismissed without prejudice, meaning that "the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by the filing." (Def.'s Opp'n (dkt. #82) 10 (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000)).

While neither *Moore* or *Elmore* proves a perfect fit to the procedural posture here, the court is inclined to err on the side of finding claims timely. Therefore, whether because the statute of limitations was tolled while plaintiffs' motion for leave to amend the complaint was pending in the *Schilling* case, or because equitable tolling is appropriate under *Mitchell v. Donchin*, 286 F.3d 447, 451 (7th Cir. 2002), the court will extend the statute of limitations period to reach back to November 17, 2014. Of course, this tolling would apply solely to claims based on plaintiffs' demonstrating that defendant required them to record time spent assembling sheetmetal as general laborer work.

### III. Sinclair's Weekend Work Claim

Finally, plaintiffs seek summary judgment on Sinclair's claim that he was not paid for time spent checking the heating system at the Harvey Hall project on the weekends between November 2014 and March 2015.[14] As detailed above, Sinclair alleges that he

---

[14] To the extent defendant is raising a statute of limitations defense with respect to this claim, the court concludes, as it did with the prevailing wage claim, that the statute of limitations was tolled while plaintiffs' motion for leave to amend in *Schilling* was pending. As such, the court finds Sinclair's claim for weekend and related overtime pay dating back to November 2014 is also timely.

was also denied overtime for at least some of these weeks because of these unpaid, weekend hours.  In response, defendant claims that Sinclair was paid for these hours by recording them as having been worked on Friday.  (Bailey Decl. (dkt. #86) ¶¶ 8-10.)  As such, there is a genuine dispute of material fact that precludes summary judgment on this claim as well.

CONCLUSION

Based on these rulings above, plaintiffs may pursue in a bench trial the following claims and avenues for relief: (1) damages for plaintiff Sinclair's FLSA overtime claim; (2) liability on plaintiff Mills' FLSA overtime claim and any resulting damages;[15] (3) damages for plaintiff Krall and Mills' incidental work state law claim; (4) liability on plaintiffs' state law claim based on misclassifying assembly work as general laborer work and resulting damages; and (5) liability on plaintiff Sinclair's weekend work claim and resulting damages.

ORDER

IT IS ORDERED that:

1) Plaintiffs' motion for summary judgment on liability (dkt. #65) is GRANTED IN PART AND DENIED IN PART. The motion is granted as to: (a) plaintiff Sinclair's claim that defendant violated the FLSA by failing to calculate their overtime rate based on the blended rate method for the week of July 20-24, 2015; (b) plaintiffs Krall and Mills' claim that defendant violated § DWD 290.03(3) by failing to pay each at the sheetmetal rate for hours spent performing incidental general laborer work for one week each; and (c) plaintiffs' argument that the statute of limitations for the state law claims should extend back to November 17, 2014.  In all other respects, plaintiffs' motion is denied.

2) Defendant's motion for partial summary judgment (dkt. #69) is GRANTED IN

---

[15] If plaintiff comes forward with evidence demonstrating that Mills was paid overtime using the rate in effect method, then defendant may attempt to prove that the § 207(g)(2) exception applies.

PART AND DENIED IN PART. The motion is granted with respect to (a) plaintiff Krall's claim under the FLSA; and (b) plaintiffs' state law prevailing wage claim based on the "separate and distinct" theory. In all other respects, defendant's motion is denied.

3) Plaintiffs' motion to amend/correct denial of class certification (dkt. #99) is DENIED, albeit without prejudice to plaintiffs promptly amending their complaint to add employees Doug Banister, Logan Baur or Bauer, Ryan Iczkowski, Luke Nowak, and Michael Nowak as plaintiffs, asserting a violation of Wis. Admin. Code § DWD 290.03(3).

Entered this 12th day of December, 2018.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge